UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES | CRIMINAL NO. 2:19-CR-42 |
| VS. | JUDGE MARY ANN VIAL LEMMON |
| ALFRED HUMBLES | |

**MR. HUMBLES' OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* FOR PRETRIAL DETERMINATION OF AUTHENTICATION AND ADMISSIBILITY OF EMAILS AND TEXT MESSAGES AND CERTIFIED DATA COPIED FROM AN ELECTRONIC STORAGE DEVICE, STORAGE MEDIUM, OR FILE**

Comes now Alfred Humbles who, through undersigned counsel, who respectfully files his Opposition to the Government's Motion *in Limine* for Pretrial Determination of Authentication and Admissibility of Emails and Text Messages and Certified Data Copied from an Electronic Storage Device, Storage Medium, or File ("Motion *in Limine*"). R. Doc. 199. In support, counsel states:

I.     **RELEVANT PROCEDURAL AND LEGAL BACKGROUND**

Mr. Humbles is charged with one count of stalking under 18 U.S.C. 2261(A)(2)(B)(1). As the Indictment spells out, the Government alleges that Mr. Humbles and the Complainant here were in a relationship. R. Doc. 43 at 1-2. When the relationship ended, the Government alleges that Mr. Humbles sent "[h]arassing and [i]ntimidating communications" over different means, *id.* at 2, including text messages and emails. *Id*. at 2-5. The Indictment charges that these communications rose to the level of stalking under 18 U.S.C. 2261(A)(2).

To properly assess the appropriateness of a pretrial determination of admissibility as the Government requests—as opposed to simply making that determination after opening statement—it is important to analyze the Fifth Circuit law about what the Government must prove here to obtain a constitutional conviction. First, the Government must prove beyond a reasonable doubt that Mr. Humbles actually transmitted these texts or emails or other communications over "any

1

interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce." 18 U.S.C. §2261A(2). If the messages were never sent or transmitted, no crime occurred.

Second, the Government must show that when sending these messages, Mr. Humbles acted "with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person." *Id*. Again, this requires that the messages the Government says were retrieved from Mr. Humbles' phone via Cellebrite to actually have been transmitted to the Complainant. Merely typing them and having them on one's phone, or typing and sending them to someone else could not satisfy the Government's burden. The messages must have been transmitted with the intent to kill, injure, harass, or intimidate the Complainant.

Finally, the Government must prove beyond a reasonable doubt that the messages *in fact* placed the Complainant in "reasonable fear of death or of seriously bodily injury of a person," 18 U.S.C. §2261(A)(2)(A), or "causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress" to the Complainant. 18 U.S.C. §2261A(2)(B). This has been referred to as the "effect" element of §2261A by the Fifth Circuit. *See United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015) Thus, to be a crime or be relevant under Fed. R. Ev. 403, the Government must prove beyond a reasonable doubt that the Complainant: a) received the communications; and b) those communications received "cause[d], attempt[ed] to cause, or would be reasonably expected to cause substantial emotional distress" to the Complainant.

II. **LAW AND ARGUMENT**

A. **Summary of Argument**

First and foremost, the Government's request to determine admissibility pretrial is premature, unneeded, and could force the defense to reveal strategic decisions to which the

Government is not entitled to learn pretrial. There is no compelling, articulated reason the Government needs to use the actual text messages themselves in opening statement, as opposed to merely describe what it expects to show during trial as happens in nearly every other trial. Then, this Court can properly rule upon any objections as the evidence that jurors hear is introduced.

Many of the arguments upon which the Government now seeks a ruling—and the objections that might be made—are entirely dependent upon what testimony is elicited at the hearing and/or trial. Specifically, whether the Complainant is testifying at the hearing and/or trial will be of great importance. For example, if the Complainant states that she received a certain text message or email from Mr. Humbles, most—if not all of—objections to hearsay or authentication to that particular message would be resolved. However, if the Government cannot show that the Complainant ever saw or reviewed the messages, they would become either wholly irrelevant or, at a minimum, more prejudicial than probative. *See* Fed. R. Ev. 403. Or, if the Government tries to prove its case by saying there are text messages/emails extracted from Mr. Humbles' phone and then correlate those to certified records from the carriers/Google, authenticity or relevance objections lie that would not if the Complainant testified instead.

Finally, while Mr. Humbles acknowledges the claim was recently rejected in a panel opinion by two members[1] of the Fifth Circuit in *United States v. Age*, 136 F.4th 193, 227 (5th Cir. 2025), he urges that use of affidavit from a record custodian certifying that phone/email records satisfy the business records exception under Fed. R. Ev. 803(6) in lieu of live testimony to authenticate business records is a blatant and severe violation of the Confrontation Clause.

---

[1] The third judge on the panel, Judge Haynes, concurred in judgment only but did not adopt or endorse the logic or reasoning in the panel opinion. *See id.* at 210 n.* ("Judge Haynes concurs in the judgment only.").

### B. A Ruling Prior to Trial, Unless the Government Produces the Complainant at the Hearing, is Premature and Should Be Deferred Until Trial

As an initial note, what evidence the Government presents at the February 4, 2026 hearing may substantially impact some arguments and objections in this Opposition. In its Motion *in Limine*, the Government writes, "As to texts and emails, a witness will testify that the emails and texts were in fact sent from Humbles via seized devices. It will also submit business certification records from Google to show the email addresses that sent the messages are self-authenticating and belong to Humbles." Gov't Motion *in Limine*, R. Doc. 199-1 at 2. The Government later writes, "To establish the records' relevance, the government will establish at the pretrial hearing that they constitute evidence relevant to an issue in this case, namely, evidence that the victim in this case was a victim of cyberstalking and that Humbles committed that offense." *Id*. at 11.

The three elements of this crime, as outlined above, are: **(1)** did Mr. Humbles actually send electronic communications via interstate commerce; **(2)** if so, did he have the "intent to kill, injure, harass, intimidate," 18 U.S.C. §2261A(2)(B); and **(3)** did the delivered messages put the Complainant in a "reasonable fear of death or of seriously bodily injury of a person," 18 U.S.C. §2261(A)(2)(A), or "cause[], attempts to cause, or would be reasonably expected to cause substantial emotional distress" to the Complainant. 18 U.S.C. §2261A(2)(B).

Any messages that are merely on Mr. Humbles phone or were transmitted to someone other than the Complainant are not relevant to this prosecution and violate Mr. Humbles' protected First Amendment speech. In *United States v. Conlan*, the Defendant was convicted of violating §2261A. 786 F.3d 380, 384-86 (5th Cir. 2015). He challenged that the statute was unconstitutionally vague by proscribing both protected free speech and unprotected true threats. *Id*. at 385-86. The Fifth Circuit denied the challenge due to §2261A's "**combination of intent and effect**" distinguishing it from other laws that had been found constitutionally vague: "§2261A does not criminalize

constitutionally protected free speech. To violate the statute, one must both intend to cause victims serious harm and in fact cause a reasonable fear of death or serious bodily injury." *Id*. at 386 (emphasis added). While that case concerns §2261(A)(2)(A), the same logic applies to §2261(A)(2)(B)— the Government must show an intended "effect" of the proscribed speech—not merely intent alone. *Id.*

To the extent the Government is attempting to introduce messages for which there is no proof that the Complainant ever received—even if they are mentioned in the Indictment,[2] Mr. Humbles has strenuous relevance (Fed. R. Ev. 401) and prejudice (Fed. R. Ev. 403) objections. For example, if the Government proved that a message/email was extracted from Mr. Humbles' phone and there is a corresponding data entry that it was sent to another phone number, Mr. Humbles urges that would remain irrelevant unless the Complainant actually received the message on one of her devices and it cause her reasonable fear of death/injury or emotional distress. Merely showing that an account associated with Mr. Humbles transmitted a message to an account at some point associated with the Complainant does not satisfy the Fifth Circuit's "effect" concerns described in *Conlan*.

However, if one of the witnesses to whom the Government is referencing in its Motion it plans to call for authentication purposes is the Complainant who will identify what individual messages and emails she personally received and viewed, many of the objections discussed herein would become moot.

---

[2] The Government argues that the fact the text messages are specifically referenced in the Indictment means they are *per se* relevant. Gov't Motion *in Limine*, R. Doc. 199-1 at 3 ("The statements are also relevant as they are the same statements that are listed in the Indictment."). This reasoning is unpersuasively tautological. The Indictment is a document drawn up by the Government, in which a Defendant has no input. Merely listing facts in the Indictment, if these facts are otherwise irrelevant, does not create a passkey to admissibility. To hold otherwise would permit the Government to simply put blatantly irrelevant inadmissible allegations or evidence in an Indictment and supplant this Court's role as the gatekeeper of evidence.

As such, a ruling without hearing from the Complainant is premature. Further, Mr. Humbles would respectfully request the opportunity to refine any arguments in post-hearing briefing (on a short deadline given the March 23, 2026 trial date) based on the evidence developed at the hearing.

### C. Without the Complainant Testifying at the Hearing, a Pretrial Ruling Would Compel Mr. Humbles to Disclose Defense Strategy to Which the Government is Not Entitled to Know at this Juncture

Neither the Government nor Mr. Humbles are compelled to reveal their strategic choices about how they seek to attack the opposing side's case pretrial. However, seeking an authentication ruling on these records at a hearing without testimony from the Complainant would unfairly put Mr. Humbles in this position.

Returning to the arguments above, the Government must show that the Complainant received these messages and they impacted her, i.e. the "effect" element of the offense that the Fifth Circuit identified in *Conlan*. Otherwise, serious First Amendment concerns are implicated. *Conlan*, 786 F.3d at 386.

Without hearing from the Complainant that she received the specific messages, the evidence upon which the Government would be left to rely upon would be either: (1) records that the messages were transmitted, or (2) statements by Mr. Humbles that he sent "ugly emails." Gov't Motion *in Limine*, R. Doc. 199-1 at 7-8. At trial, Mr. Humbles will have a strategy to argue why neither of these means are sufficient to prove the third "effect" element of the offense. However, by forcing a pretrial ruling on these issues—for example why the statement by Mr. Humbles about "ugly emails" or the phone/email records are not reliable nor sufficient to prove the "effect" element—Mr. Humbles will either be required to now reveal his strategy to challenge these methods of proof by the Government and why they are not reliable enough to satisfy authentication

requirements; or, in the alternative simply accept a pretrial admissibility ruling concerning the messages/email.

Other than a desire to use the exhibits in opening, the Government has not identified any compelling interest that would justify such a pretrial strategic disclosure by Mr. Humbles. To the contrary, Fed. R. Ev. 902(11) only states that there must be "reasonable written notice of the intent to offer the record – and make the record and certification available for inspection" to allow a party to have a "fair opportunity to challenge them." Fed. R. Ev. 902(11). Here, whether Mr. Humbles challenges these records and how are decisions properly reserved for trial, and will be tremendously impacted by whether or not the Complainant is brought to identify specific messages allegedly received and their impact on her.

### D. Acknowledging Adverse Precedent, Mr. Humbles Still Urges that *Age* Was Wrongly Decided and Introduction of Certificates in Lieu of Live Testimony from Records Custodians Violates the Confrontation Clause

As to all records proposed to be admitted through affidavit of a custodian, Mr. Humbles objects that the proposed application of Fed. R. Ev. 902(11), 902(13), and 902(14) vitiates his constitutional right to confront witnesses. The Government, under the guise of 902(11)/902(13)/902(14) seeks to admit certificates, which constitute formal out-of-court statements offered for the truth of their contents—but without being subject to Confrontation. Because the certificates are testimonial, the Constitution requires that the Government present a live witness, or identify an exception to the Confrontation Clause that was established at the time of our nation's founding.

Additional specific objections to certain records are in the Section III, *infra*.

At the outset, undersigned counsel directs this Court to *United States v. Age*, 136 F.4th 193, 226-27 (5th Cir. 2025). There, the Appellant raised substantially similar arguments as here. Two

7

judges writing for a Fifth Circuit panel rejected these arguments. *Id*. Mr. Humbles re-raises these issues to preserve the claims, though he understands the present state of law in the Fifth Circuit based on this panel decision.

### 1. The Confrontation Clause Bars the Admission of Testimonial Statements of an Absent Witness, a Description that Covers the Certificates Admitted into Evidence

"The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against him. The Clause bars the admission at trial of 'testimonial statements' of an absent witness unless she is 'unavailable to testify, and the defendant ha[s] had a prior opportunity' to cross-examine her." *Smith v. Arizona*, 602 U.S. 779, 783 (2024). The Clause applies when the prosecution uses out-of-court statements for the truth of the matter asserted. *Id*.

As to what is testimonial, the Court has settled on the primary purpose test, which asks whether, in light of all the circumstances, viewed objectively, the primary purpose was to create an out-of-court substitute for trial testimony. *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (citing *Michigan v. Bryant*, 562 U.S. 344 (2011)). Put another way, to establish or prove past events potentially relevant to later criminal prosecution. *Bryant*, 562 U.S. at 366, 375; *Davis v. Washington*, 547 U.S. 813, 822 (2006).

In *Melendez-Diaz*, the leading Supreme Court case on the use of out-of-court declarations or affidavits, the Court held that a "certificate" will clearly be testimonial where it is a solemn declaration or affirmation made for the purpose of establishing or proving some fact. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009). The Court pointed out that such "'certificates' are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" *Melendez-Diaz*, 557 U.S. at 310 quoting *Davis*, 547 U.S. at 830.

Most regularly kept business records are not testimonial, because they were "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Id*. at 324. However, regularly kept business records are testimonial when they are created in anticipation of trial, or "calculated for use essentially in court." *Id*.

Here, the prosecution seeks to admit into evidence "certificates" that take the form of sworn documents made for the purpose of establishing particular facts that were specifically created in anticipation and for use in court. These certificates are clearly testimonial—the certificates provided support for the Government's case only if true. *Smith*, 602 U.S. at 783. This was the role the certificates played at trial. *Id*.

The only question then is whether the certificates fall within some exception to the Confrontation Clause.

> **2. The Government Bears the Burden of Establishing an Exception to the Confrontation Clause by Proving a Long-Established Practice of Introducing the Specific Kind of Evidence Advanced at the Time of Founding**

The Fifth Circuit has correctly held that the Government bears the burden of showing the admissibility of its evidence and of properly raised Confrontation Clause objection by establishing that its evidence is nontestimonial. *United States v. Jackson*, 636 F.3d 687, 695 (5th Cir. 2011).

Similarly, where the evidence is testimonial, the Government bears the burden of showing a long-established practice of introducing specific kinds of evidence, such as dying declarations, for which cross-examination was not typically necessary at the time of the adoption of the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36, 56 n.6 (2004); *Clark*, 576 U.S. at 253 (Scalia J., concurring).

The specific type of evidence sought to be admitted here is an out-of-court, solemn declaration attesting to the facts the Government wishes to establish that: the records are what the

9

Government claim they are and accurate because: (1) were made at or near the time of the occurrence by, or from information transmitted by a person with knowledge of those matters; (2) the records were kept in the course of regularly conducted business activity; and, (3) the records were made by the regular conducted business activity as a regular practice.

The exception the Government must establish is not a copyist exception, but an exception that stretches far further—to an out-of-court statement attesting to the method of production and underlying accuracy of the records produced.

The Supreme Court has also made clear that the scope of the Confrontation Clause is not to be contracted by the rules of evidence and that "[w]here testimonial statements are involved, the Framers did not mean to leave the Sixth Amendment's protection to the vagaries of the rules of evidence." *Smith*, 602 U.S. at 794 (quoting *Crawford*, 541 U.S. at 61).

Just as in *Smith*, FED. R. EV.902(11) is not a rule of evidence reflecting a long-established understanding. Instead, 902(11) was introduced in 2000 to change the law to allow authentication other than through the testimony of a foundation witness and to provide for an opposing party to test the adequacy of the foundation through notice, rather than cross-examination. FED. R. EV.902(11); Notes of Advisory Committee on 2000 amendments.[3] As such, the Rules of Evidence do not support, and in fact clearly militate against, the existence of a long standing exception for certificates authenticating business records.

    **3.**    **The Supreme Court has Not Held that an Affidavit or Declaration of the Type Sought to Be Admitted Here is Non-Testimonial and Has Not Been Recognized as an Exception to Confrontation for Such Out-of-Court Statements**

It is hard to see how a certificate under 902(11) is not testimonial when the whole procedure was introduced to allow the certificates to be used in lieu of a testifying witness. As described

---

[3] FED. R. EV.902(13) & (14) were added for similar purposes in 2017.

above, such documents are prepared for use at trial and in lieu of live testimony. That is a testimonial, out-of-court statement.

The Supreme Court in *Melendez-Diaz* did not purport to announce a rule that an affidavit created to authenticate or provide a copy of an otherwise admissible record is not testimonial. In *Melendez-Diaz*, the dissent referenced an advisory committee note for FED. R. EV.902(4): "The common law . . . recognized the procedure of authenticating copies of public records by certificate." The dissent was not objecting that such certificates were not testimonial—but that the majority erred in pegging the Confrontation right to whether an out-of-court statement was testimonial or not. The dissent lost that argument and the test is whether the out-of-court statement is testimonial. As to that, the dissent believed that certificates of authentication prepared for trial were clearly testimonial and did not believe that the majority was holding that FED. R. EV.902(11) certificates did not implicate the Confrontation Clause.

The dissent noted that the majority opinion may disrupt the use of FED. R. EV.902(4) (public record) and 902(11) (business records) and require recordkeepers to testify in both instances. *Melendez-Diaz*, 557 U.S. at 336 (Kennedy, J. dissenting). It is difficult to see why the dissent would have made this observation if the majority opinion, in fact, held that 902(11) certificates were non-testimonial and did not implicate the Confrontation Clause.

In responding, the majority in *Melendez-Diaz* noted how narrowly subscribed the clerk's authority was, even under the public records exception: "He was permitted 'to certify to the correctness of a copy of a record kept in his office,' but had 'no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect.'" *Id*. at 322 (quoting from *State v. Wilson*, 75 So. 95, 97 (La. 1917)) (certified copy of a record of the internal revenue service). The majority cited two cases, one case involving

11

certification of records maintained by the internal revenue service, and the other involving a statute authorizing the use of a certified copy of a document recorded or filed in any court or public office. *State v. Wilson*, 75 So. 95, 97 (1917); *State v. Champion*, 116 N. C. 987, 988–989 21 S. E. 700, 700–701 (1895).

It was in this context that the majority stated that "A clerk could by affidavit authenticate or provide a copy of an otherwise admissible record, but could not do what the analysts did here: create a record for the sole purpose of providing evidence against a defendant." *Melendez-Diaz*, 557 U.S. at 322-23.

Taken in proper context, the majority opinion in Melendez-Diaz cannot be understood as holding to be non-testimonial 902(11) certificates completed by employees of private businesses in order to prove that attached documents are records produced by the business and to further attest to the circumstances in which they were made and the accuracy of their content.

Indeed, the majority expressly held that where the out-of-court statement was prepared specifically for use at trial, its author was subject to confrontation whether the out-of-court statement was produced in the course of regular business or not. *Id*. at 324.

To the extent that Melendez-Diaz addressed the official records doctrine, its language does not assist the Government in this case for three reasons.

First, the certificates here do more than certify that the records are a correct copy of records kept by the custodian.

Second, it did not address official records as being non-testimonial but rather as a possible exception to confrontation arising from a long founded common law acceptance of admissibility.

Third, even if there were a narrow exception to confrontation under the official records doctrine, that doctrine is firmly rooted in the narrow class of documents required to be kept by law

by accredited agents appointed for that purpose and acting under law or duty to maintain the documents

> Such writings are admissible in evidence on account of their public nature, though their authenticity be not confirmed by the usual tests of truth; namely, the swearing and the cross-examination of the persons who prepared them. They are entitled to this extraordinary degree of confidence, partly because they are required by law to be kept, partly because their contents are of public interest and notoriety, but principally because they are made under the sanction of an oath of office, or at least under that of official duty, by accredited agents appointed for that purpose.

*Gaines v. Relf*, 53 U.S. (12 How.) 472, 570, 13 L.Ed. 1071, 1112 (1851). *See also State v. Copeland*, 353 Ore. 816, 833, 306 P.3d 610, 620 (2013) (discussing how the official records doctrine allowed for certified copies of official records created and maintained by law to be admitted in criminal cases).

The official records doctrine does not capture the records of private companies, which are the province of the hearsay exception for business records.

Returning to the misapprehension of the majority opinion in *Melendez-Diaz*, the Court there also addressed the requirements of authentication and chain of custody in footnote 1 of the opinion which reads in full:

> Contrary to the dissent's suggestion, *post*, at 332-333, 335-336, 174 L. Ed. 2d, at 334-335, 337 (opinion of Kennedy, J.), we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. While the dissent is correct that "[i]t is the obligation of the prosecution to establish the chain of custody," *post*, at 335, 174 L. Ed. 2d, at 337, this does not mean that everyone who laid hands on the evidence must be called. As stated in the dissent's own quotation, post, at 336, from *United States v. Lott*, 854 F.2d 244, 250 (CA7 1988), "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility." It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony is introduced must (if the defendant objects) be introduced live. Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records. See *infra*, at 321-322, 324, 174 L. Ed. 2d, at 341-342, 343.

*Melendez-Diaz*, 557 U.S. at 311 n.1. Read in full, this passage makes clear that there is no

13

affirmative obligation to call every witness or present every document comprising a chain of custody or authentication, but only such witnesses as the prosecutor deems prudent, noting that gaps in the evidence go to weight, not admissibility. However, the Court was firm, that "what testimony is introduced must (if the defendant objects) be introduced live."

To meet its ultimate burden of proof of its case beyond a reasonable doubt, the Government needed the phone records. In turn, the phone records only become relevant evidence if they are proven to be what the Government says they are: true and accurate records of phone calls made at the relevant times.

FED. R. EV.902(11) certificates are solemnly sworn documents created for the purpose of use at trial to attest to facts the Government wishes to establish at trial in lieu of presenting live testimony. The certificates are testimonial and not subject to a long-standing common law rule of admissibility that would operate as an exception to the Confrontation Clause.

## CONCLUSION

For all these reasons, Mr. Humbles respectfully requests the Government's Motion *in Limine* for Pretrial Determination of Authentication and Admissibility of Emails and Text Messages and Certified Data Copied from an Electronic Storage Device, Storage Medium, or File be denied without prejudice as premature, and this Court reserve rulings until trial.

    Respectfully submitted,

    *Christopher J. Murell*
    Christopher J. Murell (#32075)
    MURELL LAW FIRM
    2831 St. Claude Ave.
    New Orleans, LA 70117
    (504) 717-1297 (P)
    chris@murell.law

ATTORNEY FOR MR. HUMBLES

<u>**CERTIFICATE**</u>

I hereby certify that a copy of the foregoing pleading was this date electronically filed with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

New Orleans, Louisiana this **<u>29th</u>** day of **<u>January</u>** , 2026.

<u>**/s/ Christopher J. Murell**</u>

**CHRISTOPHER J. MURELL**
